CP:SLD:PEN
F# 2008R01024

UNITED STATES OF AMERICA
EASTERN DISTRICT OF NEW YORK

M-0  679

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

DENNIS BROWN,

        Defendant.

- - - - - - - - - - - - - -X

C O M P L A I N T
T. 21, U.S.C. § 963

EASTERN DISTRICT OF NEW YORK, SS:

    CHRISTIAN ANDRETTA, being duly sworn, deposes and says that he is a special agent with United States Immigration and Customs Enforcement ("ICE"), duly appointed according to law and acting as such.

    Upon information and belief, on or about and between July 15, 2008 and July 22, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DENNIS BROWN, together with others, did knowingly and intentionally conspire to import into the United States from a place outside thereof a controlled substance, which offense involved in excess of one kilogram of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 952(a).

    (Title 21, United States Code, Sections 960(a)(1), 960(b)(1)(B)(ii) and 963; Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief is as follows:

1. I am assigned to the ICE's internal conspiracy group at JFK International Airport ("JFK") which is tasked with identifying and dismantling narcotics trafficking organizations comprised of corrupt airport employees with access to arriving international flights in the secured areas of JFK. For several years, I and my fellow agents have been involved in the investigation of several corrupt employees of American Airlines ("American") who are tasked with handling all aspects of servicing arriving and departing baggage and cargo.

2. Cooperating Witness #1 ("CW1") pleaded guilty to narcotics trafficking in the United States District Court for the Eastern District of New York. Since that time, CW1 has provided information to the government which has been corroborated through multiple sources, including prior law enforcement investigation, physical surveillance and tape recorded conversations which CW1 made at the instruction of law enforcement with various individuals.

3. CW1 stated in substance and in part that he was employed by American as a line cargo crew chief ("crew chief") for at least the past ten years until his arrest in July 2008, and, during that time, he and many other corrupt American employees imported shipments of illegal narcotics which had been

2

stowed within baggage and cargo on International flights arriving at JFK.

4. CW1 further stated that, among those individuals with whom CW1 engaged in these heretofore described narcotics importations was the defendant DENNIS BROWN, who was a fellow crew chief.

5. On July 15, 2008, under the supervision of law enforcement, CW1 engaged in a conversation with the defendant DENNIS BROWN, which was consensually recorded. CW1 advised me that CW1 and the defendant DENNIS BROWN discussed their prior experiences in importing illegal narcotics, the means and methods used to smuggle these drugs through JFK and the details of a future importation (the "importation"). CW1 subsequently related this conversation to me. With regard to the importation, CW1 informed me that CW1 and the defendant DENNIS BROWN discussed whether or not heroin or cocaine should be imported and the fact that CW1 and the defendant DENNIS BROWN would take a portion of the drug shipment for themselves to sell to raise money to pay the defendant DENNIS BROWN, CW1 and other American employees for assisting in importing the illegal narcotics. Specifically, CW1 informed me that the defendant DENNIS BROWN agreed with CW1 to import cocaine and sell approximately 6 to 7 kilograms from the 26 kilogram shipment to pay the American employees (including BROWN and CW1) for their participation in the cocaine

importation. CW1 and the defendant DENNIS BROWN also discussed various American employees who could be trusted to participate in the scheme. I have listened to the consensual recording of this conversation and have confirmed that the information provided to me by CW1 was accurate.

6. On July 19, 2008, CW1, under the supervision of law enforcement, met with the defendant DENNIS BROWN and a co-conspirator (CC1), who also was an American crew chief, to further discuss the importation. This conversation was consensually recorded by CW1. I am informed by CW1 that, among other things that were discussed, CW1, BROWN and CC1 agreed that, because CW1 was no longer working for American, that BROWN and CC1 would unload the cocaine from the plane when the importation occurred.

7. On July 21, 2008, CW1 met with the defendant DENNIS BROWN and CC1 under the supervision of law enforcement and engaged in a conversation which was consensually recorded. CW1 informed me that, among other things that were discussed, CW1 informed the defendant DENNIS BROWN and CC1 in substance that the cocaine was at the airport in the Dominican Republic and the drugs would be stowed aboard American Airlines ("American") Flight 834 ("Flight I"), which was due to arrive at JFK from Santiago, Dominican Republic on July 22, 2008 at approximately 2:40 p.m. During that conversation, the defendant DENNIS BROWN

stated in sum and substance that Flight I was "too hot," that there had recently been intense law enforcement surveillance of that flight, that he had a bad feeling about it and that they should wait for next week to import the cocaine.

8. On July 22, 2008, a special agent from the DEA in the Dominican Republic placed a black and red duffle bag ("the bag") containing ten bricks of a white powdery substance (which was not a controlled substance) within container number DKN15106AA ("the container") which was loaded aboard American Flight 834 ("Flight I"), which was scheduled to arrive at JFK from Santiago, Dominican Republic later that day. At approximately 3:01 p.m., Flight I arrived at JFK.

9. Prior to Flight I's arrival, under the supervision of law enforcement, CW1 engaged in a conversation with CC1 in which CW1 confirmed with CC1 that the bag containing the cocaine shipment had been placed aboard Flight I and gave CC1 the number of the container in which the bag was stowed. In subsequent conversation, CC1 advised CW1 in sum and substance that he contacted the defendant DENNIS BROWN and that BROWN stated in sum and substance that he would not help CC1 remove the bag from FLIGHT I. Ultimately, after Flight I arrived and the container was off-loaded, CC1, with the help of another American baggage handler, recovered the bag and handed it off to CW1.

10. Following CC1's retrieval of the bag, under the supervision of law enforcement, CW1 engaged in a conversation with CC1 in which CW1 in sum and substance told CC1 to contact the defendant DENNIS BROWN to see if BROWN had anyone available to sell the drugs. CC1 later reported to CW1 that the defendant DENNIS BROWN was going to contact "his boy," meaning his contact who could sell the cocaine that had been retrieved from Flight I. Later that evening, the defendant DENNIS BROWN placed a telephone call to CW1 which was consenually recorded during which the defendant DENNIS BROWN advised CW1 in sum and substance that he was waiting to hear "from his boy," meaning his contact who could sell the cocaine that had been retrieved from Flight I.

11. At approximately 1:30 a.m., on July 23, 2008, CC1 was arrested.

WHEREFORE, it is respectfully requested that an arrest warrant be issued for the defendant DENNIS BROWN for a violation of Title 21, United States Code, Section 963 and 960(b)(1)(B)(ii) so that he can be dealt with according to law. It is further requested that his complaint and proposed warrant be placed under seal.

SA CHRISTIAN ANDRETTA
Special Agent, ICE

Sworn to before me on
t

T͟
U͟N͟I͟T͟E͟D͟ ͟S͟T͟A͟T͟E͟S͟ MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK